**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEYSTONE ALTERNATIVES LLC** | : | |
| **d/b/a GOPSURV.COM and** | : | |
| **MARK LAUER,** | : | **No. 1:23-cv-01161** |
| **Plaintiffs** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **ATHLETES FIRST, LLC, CHRIS** | : | |
| **LONGO, TRACE ARMSTRONG,** | : | |
| **and JOHN DOES 1–5,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is a motion to dismiss (Doc. No. 12) Plaintiffs Keystone Alternatives

LLC and Mark Lauer ("Plaintiffs")' amended complaint (Doc. No. 10), filed by Defendants

Athletes First, LLC, Chris Longo, Trace Armstrong, and John Does 1–5 ("Defendants").  For the

reasons that follow, the Court will grant the motion.

I.      **BACKGROUND**[1]

Plaintiff Keystone Alternatives LLC, doing business as GOPSURV.COM ("Keystone"),

is in the business of renting recreational vehicles ("RVs"), with a focus on renting RVs to

Pennsylvania State University ("PSU") fans and affiliates.  (Doc. No. 10 ¶ 2.)  Plaintiff Mark

Lauer ("Lauer") is a part owner of the business.  (Id. ¶ 9.)  Plaintiffs allege that on January 6,

2017, Chris Longo ("Longo"), an employee of the sports agency firm Athletes First, LLC

("Athletes First") (id. ¶¶ 10–11, 18), approached Lauer, "regarding whether he would have any

interest in contracting with [PSU football coach, James Franklin ("Franklin")] and PSU to allow

---

[1] This background is drawn from Plaintiffs' amended complaint (Doc. No. 10), the allegations of
which the Court accepts as true for purposes of the pending motion to dismiss.  See Kedra v.
Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

Franklin and his staff to use Plaintiffs' RVs" (id. ¶ 18).  Plaintiffs assert that Longo stated that in return "he would be able to contract to facilitate advertisements for Lauer's and Plaintiffs [sic] business as well as endorsements by Franklin for his products and services . . . ."  (Id. ¶ 19.)

Plaintiffs claim that, because of these conversations and additional communications with Longo through texts, emails, and phone calls (id. ¶ 24), Keystone and Franklin agreed to enter into long-term business contracts whereby Keystone would provide Franklin and his family with the use of RVs and in return Franklin would endorse Plaintiffs' business (id. ¶¶ 3–5).  Plaintiffs assert that these "express and implied contracts were created and consummated through the language of multiple text messages and by multiple conversations by phone in which Defendant Longo both participated and consummated the contracts after representing to the Plaintiffs his multiple meetings with Franklin and Franklin's acquiescence to the contracts."  (Id. ¶ 5.)

Plaintiffs allege that they performed their part of the agreement by providing Franklin and his family with the use of an RV (id. ¶¶ 24, 31), and that, although Franklin performed some endorsements for Plaintiffs' business, they believed that their contracts with Franklin included additional future endorsements, like commercials (id. ¶¶ 23, 34).  Plaintiffs assert that Longo, on behalf of Franklin, agreed to Franklin's endorsement of Keystone coupon flyers, later distributed at a PSU home football game, stating that Keystone was "the official RV dealer of Coach Franklin."  (Id. ¶ 32.)  Plaintiffs further allege that, during that same game day, Franklin "came to the RV lot to sign his name on the roof of an RV."  (Id.)

However, Plaintiffs allege that "the agreements were for a long-term mutual collaboration" including future endorsements that were never performed.  (Id.)  Additionally, Plaintiffs claim that "instead of fulfilling the benefit of the bargain reached with the Plaintiffs," Defendants sought "ways to avoid the performances of the contract agreements."  (Id. ¶¶ 25, 30.)

Plaintiffs accuse Defendants of undermining their alleged contracts with Franklin by continually rescheduling possible commercial filming dates, looking for other cheaper RV rentals, and making false claims about Plaintiffs.  (Id. ¶ 25.)

In a separate but related matter, on November 27, 2019, PSU filed a lawsuit against Plaintiffs (the "2019 lawsuit") claiming that Plaintiffs violated a number of intellectual property laws through their use of PSU trademarked property.  (Id. ¶¶ 35, 59.)  Plaintiffs allege that PSU's lawsuit was in part based on Plaintiffs' actions concerning the distribution of the Keystone coupon flyers endorsed by Franklin and distributed at the PSU football game.  (Id. ¶ 59.) Although that case is still pending with this Court, Plaintiffs assert that, through the course of that litigation, Longo provided deposition testimony during which he revealed that he was never directly in contact with Franklin and that he only ever communicated to Plaintiffs "what [he] was told by supervisors," including Trace Armstrong and John Does 1–5, Franklin "was potentially interested" in.  (Id. ¶ 37.)  Allegedly, Longo also admitted that neither he nor anyone else working for Athletes First had ever talked to Franklin concerning the existence of contracts or prospective contracts with Plaintiffs.  (Id. ¶¶ 46, 66.)

Plaintiffs claim that, in preparation for Longo's deposition in the 2019 lawsuit, Longo, Defendants, and PSU representatives conspired to shield Franklin from any liability.  (Id. ¶ 62.) Therefore, Plaintiffs allege that, during Longo's deposition in 2021 and in preparation for that deposition, "Longo and the Defendants made repeated representations claiming that no relationship existed between the Plaintiffs' [sic] and Franklin revealing that they had taken specific action to undermine the relationship[.]" (Id. ¶ 86.)  Plaintiffs assert that by conspiring and testifying "that he never had any contact with Franklin, nor [had created] contracts with Franklin," Longo "undermined the reputation of the Plaintiffs for any future relationships with

Franklin[.]" (Id. ¶ 46.)

Plaintiffs assert that, throughout 2017, Longo repeatedly claimed to possess the authority to act on Franklin's behalf (id. ¶ 51), and "repeatedly assured the Plaintiffs that Franklin was onboard with contracting for the use of its RVs and Franklin's endorsements of its products and services" (id. ¶ 66.) Therefore, Plaintiffs allege that "Longo had bound Franklin allegedly without his knowledge to contracts for commercials, printed flyers, and coupons, and most importantly to the 'Official RV Rentals of Coach Franklin' endorsement." (Id. ¶ 54.) As noted supra, when deposed, Longo denied that he had created contracts between Plaintiffs and Franklin. (Id. ¶ 48.) Plaintiffs assert that, because of Longo and Defendants' "failure to act in accordance with the contracts created with the Plaintiffs, the Plaintiffs [sic] reputation was destroyed in the eyes of Franklin as it related to a long-term relationship with the Plaintiffs." (Id. ¶ 58.) Additionally, Plaintiffs allege that:

> but for Longo and the Defendants [sic] actions to include Franklin's name and likeness on PSU flyers created by the Plaintiffs, and the distribution of the same, with the claims made by Longo that the Plaintiffs had PSU's approval through its Athletic Director ("AD") and Franklin, as based upon alleged discussions that Longo claimed he was having with the AD and Franklin on the Plaintiffs [sic] behalf, PSU, in some part, would not have deemed the actions of the Plaintiffs to be in violation of its trademarks causing the Plaintiffs significant costs incurred in defending the [2019 lawsuit].

(Id. ¶ 59.) Plaintiffs assert that "Defendants, through Longo, have intentionally and maliciously deceived the Plaintiffs, interfered with the existing and potential contracts between the Plaintiffs and Franklin" and "irreparably damaged" Plaintiffs' relationship with Franklin, resulting in "the loss of significant public exposure for their business, innumerable customer relationships, other potential business endorsements flowing from the relationship with Franklin, incalculable profits and loss of reputational exposure." (Id. ¶ 68.)

Accordingly, on July 12, 2023, Plaintiffs filed their initial complaint against Defendants

invoking this Court's diversity jurisdiction and asserting the following four (4) state law claims: tortious interference with contract (Count I); tortious interference with prospective contract (Count II); fraudulent misrepresentation (Count III); and negligent misrepresentation (Count IV). (Doc. No. 1.)  In response, on August 16, 2023, Defendants filed a motion to dismiss accompanied by a brief in support, arguing that all four claims were barred by the applicable statutes of limitations.  (Doc. Nos. 8, 9.)  Thereafter, on August 29, 2023, Plaintiffs filed an amended complaint reasserting the initial four (4) claims against Defendants: tortious interference with contract (Count I); tortious interference with prospective contract (Count II); fraudulent misrepresentation (Count III); and negligent misrepresentation (Count IV); and asserting two (2) additional claims against Defendants: breach of contract (Count V); and breach of implied contract (Count VI).  (Doc. No. 10.)  In response to the filing of Plaintiffs' amended complaint, on August 29, 2023, this Court denied Defendants' original motion to dismiss as moot.  (Doc. No. 11.)  On September 11, 2023, Defendants filed a motion to dismiss the amended complaint (Doc. No. 12), accompanied by a brief in support (Doc. No. 13).  Plaintiffs filed a brief in opposition on October 3, 2023 (Doc. No. 14), and Defendants filed a reply brief (Doc. No. 15).  Having been fully briefed, Defendants' motion to dismiss is ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that

the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the

United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the

following steps a district court must take under Rule 12(b)(6): (1) identify the elements a

plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the

complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded

factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."

See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at

679).  A "complaint is subject to dismissal for failure to state a claim on statute of limitations

grounds [] when the statute of limitations defense is apparent on the face of the complaint." See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

Defendants seek dismissal of all six state law claims asserted in the amended complaint on the following grounds: (1) Counts I (tortious interference with contractual relations), II (tortious interference with prospective contractual relations), III (fraudulent misrepresentation), and IV (negligent misrepresentation) fail to state a claim because they are barred by the relevant statutes of limitations; (2) Counts I and II otherwise fail to state a claim upon which relief may be granted; and (3) Counts V (breach of contract) and VI (breach of implied contract) fail to state a claim upon which relief may be granted.  The Court first addresses Defendants' timeliness argument.

### A.   Counts I through IV

"[A] federal court must apply the substantive laws of its forum state in diversity actions." Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  Those substantive laws "include state statutes of limitations."  See Lafferty, 495 F.3d at 76 (citing Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945)).  Under Pennsylvania law, a cause of action accrues and a statute of limitations begins to run "as soon as the right to institute and maintain a suit arises."  See Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005).  The

discovery rule is an exception that operates to toll the statute of limitations until the plaintiff "knew or, exercising reasonable diligence, should have known that (1) he or she was injured and (2) that the injury was caused by another."  See Adams v. Zimmer US, Inc., 943 F.3d 159, 163 (3d Cir. 2019).  Pennsylvania's discovery rule provides that the statute of limitations period is only tolled until plaintiffs have "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury . . . or precise cause"—or, in other words, "inquiry notice" of a potential cause of action.  See Rice v. Diocese of Altoona-Johnstown, 255 A.3d 237, 249 (Pa. 2021) (citing Wilson v. El-Daief, 964 A.2d 354, 364 (Pa. 2009));[2] see also SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 219 (3d Cir. 2022) (finding defendant's counterclaim barred by the statute of limitations because defendant had "constructive knowledge of a potential material misrepresentation," had two years to investigate the apparent injury, and still failed to file within the appropriate period).

Under Pennsylvania law, a two-year statute of limitations period applies to tortious interference with contract claims.  See 42 Pa.C.S. § 5524(3); CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 383 (3d Cir. 2004) (stating that "Pennsylvania courts apply the two year statute of limitations of 42 Pa.C.S.A § 5524(3) to tortious interference with contractual relations claims").  A two-year statute of limitations period similarly applies to fraudulent misrepresentation and negligent misrepresentation claims.  See 42 Pa.C.S. § 5524(7); SodexoMAGIC, LLC, 24 F.4th at 218 (fraud); Toy v. Metro. Life Ins. Co., 863 A.2d 1, 9 (Pa.

---

[2]  In Rice, the court discussed two competing approaches to the discovery rule—a "more liberal approach, favorable to plaintiffs," and a "stricter and less plaintiff favorable 'inquiry notice' approach"—and noted that Pennsylvania has adopted the stricter approach that is more defendant friendly in that it requires a lesser degree of notice to a plaintiff before starting the limitations clock.  See Rice, 255 A.3d at 247.

Super. Ct. 2004) (negligent misrepresentation).

As noted <u>supra</u>, Defendants argue that Plaintiffs' tortious interference and misrepresentation claims fail to state claims upon which relief may be granted because they are barred by the relevant statutes of limitations.

As to the tortious interference claims, Defendants note that the amended complaint alleges that Plaintiffs entered a contract with Franklin in 2017, and that Defendants took action to undermine that contract during 2017 and beyond.  (Doc. No. 13 at 16) (citing Doc. No. 10 ¶¶ 57, 78).  Defendants maintain that, pursuant to the allegations of the amended complaint, Plaintiffs had constructive knowledge of their injuries resulting from the alleged contractual inference in 2017 because, while Plaintiffs performed their part of the Franklin agreement in 2017 (providing RVs to Franklin's family), Franklin was not performing his side of the alleged contract.  (Doc. No. 13 at 19–20) (citing Doc. No. 10 ¶¶ 51, 126).  Defendants further contend that, at the very least, Plaintiffs had constructive knowledge of their potential tortious interference claims in 2019 when PSU filed its lawsuit against Plaintiffs based in part on conduct Plaintiffs maintain was permissible under their alleged agreement with Franklin.  (Doc. No. 13 at 22.)  Therefore, Defendants argue that, applying the two-year statute of limitations period, Plaintiffs' tortious interference with contract claims, first asserted in its July 12, 2023 complaint, were time-barred in either 2019 or 2021.

As to Plaintiffs' misrepresentation claims, Defendants similarly note that the amended complaint asserts that Defendants made misrepresentations in "2017 and beyond" regarding their communications with Franklin that caused Plaintiffs to believe they could use certain PSU intellectual property, leading to the 2019 lawsuit.  (<u>Id.</u> at 25) (citing Doc. No. 10 ¶¶ 91, 95, 96).  Defendants contend that, at the least, Plaintiffs had constructive knowledge of their

misrepresentation claims based on these statements when PSU filed the 2019 lawsuit.  (Id.)
Accordingly, because Plaintiffs' initial complaint was filed more than two years after the filing
of the 2019 lawsuit, Defendants maintain that Plaintiffs' misrepresentation claims are time-
barred.

      In response, Plaintiffs argue that their tortious interference and misrepresentation claims
are not barred by the relevant statutes of limitations.[3]  In addressing their tortious interference
claims, Plaintiffs argue that they can be separated into (1) a claim based on Defendants' 2017
conduct and (2) a claim based on Defendants' 2021 conduct.  (Doc. No. 14 at 5–10.)  To the
extent Plaintiffs argue that the amended complaint states a tortious interference claim based on
Defendants' 2021 conduct, that argument will be addressed infra in Section III.B.

      Plaintiffs assert that their claims are tolled by the Pennsylvania discovery rule, arguing
that "the earliest they could have reasonably known about the violation of their rights was on
July 21, 2021, when" Longo provided his deposition testimony in the 2019 lawsuit.  (Doc. No.
14 at 7.)  They further state that in 2017 they knew only that "Franklin did not have time to make
commercials" (id. at 7–8) (citing Doc. No. 10 ¶¶ 20–25), which would not constitute significant
harm, constructive knowledge, or circumstances that would trigger an inquiry by Plaintiffs (id. at
8).  Plaintiffs also assert that "should the court deem that there is a question of fact as to whether
Franklin's inability to set a time to make the commercials should be deemed significant harm
then that question is better left for a jury to decide, as reasonable minds could differ."  (Id.) (first
citing Gleason v. Borough of Moosic, 15 A.3d 479, 485 (Pa. 2011) and then citing Wilson, 964

---

[3]  Plaintiffs address their Count I and Count II tortious interference claims together (Doc. No. 14
at 4) and later simply reference those arguments in support of the timeliness of their Count III
and IV misrepresentation claims (id. at 13).  Plaintiffs do not independently address the
timeliness of their misrepresentation claims.  Accordingly, the Court employs the same
approach.

A.2d at 366 n.12).  However, Plaintiffs do not address Defendants' argument that Plaintiffs possessed constructive knowledge of the potential violation of their rights when Plaintiffs were sued by PSU in 2019.

Upon careful consideration of the amended complaint, the parties' briefing, and relevant authority, the Court concludes that Plaintiffs' tortious interference with contract and misrepresentation claims are barred by the relevant two-year statutes of limitations.  As to their tortious interference claims, Plaintiffs correctly assert that they did not necessarily have constructive knowledge of their injuries just by knowing that Franklin did not have time to make commercials in 2017; however, pursuant to the allegations of the amended complaint, Plaintiffs had constructive knowledge of significant harm in 2019 when they were sued by PSU.  Despite Plaintiffs' allegation that the 2019 lawsuit "had absolutely nothing to with any claims related to" this action (Doc. No. 10 ¶ 71), elsewhere in the amended complaint they assert that:

> but for Longo and the Defendants [sic] actions to include Franklin's name and likeness on PSU flyers created by the Plaintiffs, and the distribution of the same, with the claims made by Longo that the Plaintiffs had PSU's approval through its Athletic Director ("AD") and Franklin, as based upon alleged discussions that Longo claimed he was having with the AD and Franklin on the Plaintiffs [sic] behalf, PSU, in some part, would not have deemed the actions of the Plaintiffs to be in violation of its trademarks causing the Plaintiffs significant costs incurred in defending the [2019 lawsuit].

(id. ¶ 59.)  Plaintiffs also allege that Defendants "took specific action to undermine the relationship both, [sic] during 2017 and beyond, and after PSU filed claims against the Plaintiffs in 2018 and 2019" (id. ¶ 78), and that "Defendants' misrepresentations, in part, led to [the 2019 lawsuit]" (id. ¶ 96).

The above allegations of the amended complaint reflect Plaintiffs' constructive knowledge, in 2019, of some significant harm to its alleged contractual relationship with Franklin and, at least to a partial extent, the factual cause of that harm.  When PSU sued

11

Plaintiffs in 2019, Plaintiffs were put on notice of Defendants' possible wrongdoing related to the contract Plaintiffs believed they had made with Franklin.  <u>See</u> (Doc. No. 10 ¶ 59).  Because Plaintiffs had constructive knowledge of a potential claim when they sustained an injury in 2019, they "had two years from that date to discover other actors potentially liable for [their] injury."  <u>See</u> <u>Rice</u>, 255 A.3d at 249.  Plaintiffs did not file their initial complaint asserting Counts I through IV until July 12, 2023.  Accordingly, Plaintiffs' tortious interference (Counts I and II) and misrepresentation (Counts III and IV) claims fail to state a claim upon which relief can be granted because they are barred by the applicable statutes of limitations, and the Court will therefore dismiss those claims.  Below the Court addresses Plaintiffs' claim that the amended complaint plausibly states a tortious interference claim based on Defendants' 2021 conduct.

**B.**     **Counts I and II**

To state a viable claim for tortious interference with existing contractual relationships under Pennsylvania law, a plaintiff must allege facts in support of the following elements:

> (1) the existence of a contractual ... or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct.

<u>See</u> <u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 212 (3d Cir. 2009) (citing <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 530 (3d Cir. 1998)).  A claim for tortious interference with prospective contractual relationships consists of these elements with respect to a prospective contractual or economic relationship and includes the additional element of "a reasonable likelihood that the relationship would have occurred but for the defendant's interference."  <u>See</u> <u>id.</u> (citing <u>Brokerage Concepts</u>, 140 F.3d at 530).

As noted <u>supra</u>, Plaintiffs suggest that their tortious interference claims are also based on Defendants' conduct in 2021 and that such claims are therefore timely under the applicable two-

year statute of limitations.  Plaintiffs assert that they filed their July 12, 2023 initial complaint

within two years of the time that Longo, in connection with his interactions with PSU

representatives regarding his deposition testimony in the 2019 lawsuit, "had conversations with

PSU representatives about things wholly outside the scope of the prior suit (namely, Longo's

fraudulent activities) and these interactions included discussing how to avoid potential liability

Longo may have incurred for Franklin by his own fraudulent acts."  (Doc. No. 14 at 5–6.)

Accordingly, Plaintiffs maintain that tortious interference claims based on this 2021 conduct are

timely under the applicable two-year statute of limitations, without reference to the discovery

rule.  (Id. at 6.)

Defendants argue that any such claims based on 2021 conduct should be dismissed

because the claims are based on alleged factual material that is barred by the witness immunity

doctrine.  Defendants maintain that Plaintiffs do not allege any factual matter to support their

claim of tortious interference with contract except for Longo's deposition, and pursuant to the

witness immunity doctrine, Longo's deposition testimony in the 2019 lawsuit "cannot form the

basis for any tort claim against him or his employer."  (Doc. No. 13 at 23–24.)

Plaintiffs respond that witness immunity does not apply here to preclude a tortious

interference claim based on Longo's 2021 testimony, for two reasons: (1) Longo's testimony was

not relevant and material to the 2019 lawsuit; and (2) Longo's alleged discussions with PSU

representatives regarding his testimony destroyed any witness immunity due to over publication.

(Doc. No. 14 at 10–12.)

Witnesses are immune from civil liability based on their testimony—even if false—in

judicial proceedings.  See Briscoe v. LaHue, 460 U.S. 325, 329–36 (1983); Hughes v. Long, 242

F.3d 121, 125 (3d Cir. 2001) (stating that "[w]itnesses, including public officials and private

citizens, are immune from civil damages based upon their testimony"); Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987) (noting that "it is well settled that private witnesses, as well as counsel, are absolutely immune from damages liability for testimony, albeit false, given or used in judicial proceedings").

Upon consideration of the amended complaint, the parties' briefing, and relevant authority, the Court is unpersuaded that Plaintiffs' amended complaint plausibly states tortious interference claims based on alleged 2021 conduct.  Plaintiffs point to two 2021-era allegations of their amended complaint: (1) that Defendants undermined Plaintiffs' business relationship with Franklin "through both Longos [sic] testimony in 2021 and during the various phases of the contract from 2017 and beyond"; and (2) that Longo "began to conspire" with PSU representatives to avoid exposing PSU or Franklin to liability based on "fraud as it related to the Franklin contracts as well as the fraudulent claims that he had been given authority to grant the Plaintiffs the rights to use the domain GOPSURV on its advertisements."  (Doc. No. 14 at 6) (citing Doc. No. 10 ¶¶ 53, 62).  The Court agrees with Defendants that these tortious interference allegations improperly rely on Longo's deposition testimony as a basis for the claim because that testimony is protected by the witness immunity doctrine.

First, as noted supra, and contrary to Plaintiffs' assertion that Longo's testimony was not relevant and material to the 2019 lawsuit, the amended complaint reflects Plaintiffs' belief that "but for Longo and the Defendants [sic] actions to include Franklin's name and likeness on PSU flyers created by the Plaintiffs, and the distribution of the same, with the claims made by Longo that the Plaintiffs had PSU's approval through its Athletic Director ("AD") and Franklin . . . PSU, in some part, would not have deemed the actions of the Plaintiffs to be in violation of its trademarks," resulting in the 2019 lawsuit.  (Doc. No. 10 ¶ 59.)  The amended complaint further

14

demonstrates the potential relevance and materiality of Longo's testimony to the 2019 lawsuit given its assertion that Longo's testimony "undermine[d]" the 2019 litigation by "actively frustrat[ing] the search for the truth and purposefully mis[leading]" Plaintiffs and the Court.  (Id. ¶¶ 42, 40.)  Because the allegations of the amended complaint reflect that testimony relating to Longo's discussions or lack thereof with Franklin is relevant and material to the 2019 litigation, the witness immunity doctrine applies to that testimony, and therefore, it cannot provide a basis for Plaintiffs' claims.[4]

The Court is also unpersuaded by Plaintiffs' second argument concerning the alleged over publication of Longo's deposition testimony.  In support of this argument, Plaintiffs rely on Agriss v. Roadway Express, Inc., 483 A.2d 456 (Pa. Super. Ct. 1984) and Pelagatti v. Cohen, 536 A.2d 1337 (Pa. Super. Ct. 1987).  In Agriss, an employer made a defamatory accusation against an employee in a warning letter, and that accusation was later disseminated to other employees.  See Agriss, 485 A.2d at 460.  The Superior Court determined that, because the defamatory accusation was published to individuals who were not authorized to receive it, the employer lost the absolute privilege applicable to the statement.  See id. at 463–67.  Pelagatti involved a defamatory statement made during judicial proceedings but later broadcast in a press conference, and the Superior Court held that witness immunity did not extend to the statement repeated outside of the judicial proceeding in the press conference.  See Pelagatti, 536 A.2d at 1344–45.  Here, the allegations of the amended complaint suggest that Longo may have communicated with PSU representatives prior to his deposition "to determine how to best

---

[4]  As noted supra, this is so even if the testimony was false.  See Briscoe, 460 U.S. at 331–32 (stating that "[t]he plaintiff could not recover even if the witness knew the statements were false and made them with malice"); Pelagatti, 536 A.2d at 1342 (stating that "private witnesses . . . are absolutely immune from damages liability for testimony, albeit false, given or used in judicial proceedings").

approach the testimony." (Doc. No. 10 ¶ 62.) The amended complaint does not allege any subsequent restatement of Longo's testimony after his deposition; accordingly, Agriss and Pelagatti are inapposite. In addition, Plaintiffs' argument that "if [Longo] spoke to PSU representatives about his tortious conduct, which Plaintiffs aver fell outside the scope of [the 2019 lawsuit], and those PSU representatives published that information to other parties like Franklin, then Longo could be accountable for those over publications" (Doc. No. 14 at 11), is unsupported by sufficient factual matter in the amended complaint to state a plausible claim, amounting to nothing more than speculation.

Accordingly, to the extent that Plaintiffs' tortious interference claims are construed as based on 2021 conduct, the Court finds that they fail to state a claim upon which relief may be granted and will therefore dismiss Counts I and II on that basis as well.[5] The Court turns to Plaintiffs' breach of contract and implied breach of contract claims.

### C.    Counts V and VI

Under Pennsylvania law, the elements of breach of contract are "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3)

---

[5] Plaintiffs briefly argue that, even if witness immunity applies, "the immunity only flows to the one testifying in a prior case whose testimony was material and relevant in that case and not to others associated with the deponent who did not testify." (Doc. No. 14 at 12–13.) In support of this assertion, Plaintiffs generally cite Panitz v. Behrend, 632 A.2d 562 (Pa. Super. Ct. 1993). The Court's review of Panitz reveals that it broadly characterizes the witness immunity privilege, as follows:

> The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceeding and was material and relevant to it, the privilege applies.

See Panitz, 632 A.2d at 564 (quoting Clodgo by Clodgo v. Bowman, 601 A.2d 342, 345 (Pa. Super. Ct. 1992)).

resultant damages." See Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written." Enslin v. The Coca-Cola Co., 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015), aff'd sub nom. Enslin v. Coca-Cola Co., 739 F. App'x 91 (3d Cir. 2018). In Pennsylvania, a "contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." See Liss & Marion, P.C. v. Recordex Acquisition Corp., 983 A.2d 652, 659 (Pa. 2009) (quoting Elias v. Elias, 237 A.2d 215, 217 (Pa. 1968)). An actual "meeting of the minds" is not necessary, as it is the parties' "outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." See Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 482–83 (Pa. Super. Ct. 1984).

As an initial matter, Defendants note that Plaintiffs "presumably added [the breach of contract claims in the amended complaint] because [they] hope that their longer limitations period will permit some part of the amended complaint to survive." (Doc. No. 13 at 26.) However, Defendants argue that all the contract-related allegations in the amended complaint assert that Longo represented Franklin in negotiations with Plaintiffs in an effort to produce a contract between Plaintiffs and Franklin, not that any Defendant "would be a party to or have any duties under the alleged contract." (Doc. No. 13 at 27.) They note that "[i]t is a basic tenant of agency law that an individual acting as an agent for a disclosed principle is not personally liable on a contract between the principle and a third party unless the agent specifically agrees to assume liability." (Id. at 26) (quoting Vernon D. Cox & Co., Inc. v. Giles, 406 A.2d 1107, 1110 (Pa. Super. Ct. 1979)). Based on this principle, Defendants assert that Plaintiffs' amended

complaint fails to state a claim for breach of contract or implied contract against them as alleged agents of Franklin. (Doc. No. 13 at 26–27.) Further, Defendants suggest that, even if Plaintiffs seek to rely on a "little-used exception to the general rule of agent non-liability that may apply when an agent enters into a contract but without the principal's authority," (id. at 27), Plaintiffs cite no authority to support the proposition that such a legal theory could apply to a personal-services contract, such as the one alleged to exist between Franklin and Plaintiffs (id.).

In response, Plaintiffs argue that the amended complaint pleads breach of contract claims against Longo and the other Defendants "under the principle of agency due to the deceit of Longo." (Doc. No. 14 at 13.) Plaintiffs cite Roberts v. Estate of Barbagallo, 531 A.2d 1125 (Pa. Super Ct. 1987) in support of the proposition that Longo should be held contractually liable to Plaintiffs due to his alleged deceit. (Id.) Plaintiffs also argue that "since [Longo] was not acting on Franklin's behalf, then he was acting on his own behalf, and for his own benefit, and thus accepted liability under Franklin's and the Plaintiffs' contract," citing Revere Press, Inc. v. Blumberg, 246 A.2d 407 (Pa. 1968). (Id.) Further, Plaintiffs assert that:

> Plaintiffs allege the Defendants were all in privity with the Plaintiffs given their agency status and sought to avail themselves of the good will the Plaintiffs shared with them on Franklin's behalf. In doing so, the Plaintiffs aver that the Defendants hoped this would help them retain their agency relationship with Franklin, which it did not. Nevertheless, the Defendants owed a duty to consummate the Agreements with the Plaintiffs, and because they did not, they are liable for damages.

(Id. at 14–15.) Plaintiffs cite Zeno v. Ford Motor Co., 238 F.R.D. 173, 192 (W.D. Pa. 2006) in support of their argument that Defendants' agency relationship with Franklin excuses the contractual requirement of privity. (Id. at 14.)

Upon consideration of the amended complaint, the parties' briefing, and relevant authority, the Court is unpersuaded that the amended complaint states plausible breach of contract claims against Defendants. As noted by Defendants, Plaintiffs fail to respond to

Defendants' primary argument challenging these claims—that Plaintiffs have pointed to no authority applying agent liability in the context of a personal services contract such as the one alleged in the amended complaint.  Instead, Plaintiffs cite the three cases noted above, none of which supports their claims of contractual liability under the circumstances alleged in the amended complaint.  Although Roberts v. Estate of Barbagallo cites Section 348 of the Restatement (Second) of Agency for the proposition that an agent "may be liable to an injured third party for his own deceit in a transaction on behalf of his principal," the case suggests that an agent may be liable in tort for fraudulent misrepresentations made on behalf of a principal, not that an agent may be subject to liability pursuant to a contract made on behalf of a principal.  See Roberts, 531 A.2d at 1130.  Plaintiffs also cite Revere Press, Inc. v. Blumberg, which addresses agent liability under limited circumstances, such as those present in that case, where a plaintiff incurred costs in producing a product (dental hygiene literature).  See Revere Press, Inc., 246 A.2d at 407–11.  However, that case did not address the issue of agent liability under the circumstances of a personal services contract like the one alleged in the amended complaint. Plaintiffs' citation to Zeno v. Ford Motor Co. for the proposition that "an agency relationship may excuse the general requirement of privity" of contract (Doc. No. 14 at 14) is similarly unavailing.  As noted by Defendants, the portion of Zeno relied on by Plaintiffs discusses the circumstances under which an agency relationship can be used to establish the potential contractual liability of a principal who is not in privity with the other party to the contract—it does not address the potential liability of an agent.  See Zeno, 238 F.R.D. at 192–93.  In sum, Plaintiffs have pointed to no authority imposing liability on an agent under the circumstances alleged in the amended complaint.

Accordingly, because Plaintiffs' amended complaint fails to state a claim for breach of

contract (Count V) or implied contract (Count VI) against Defendants due to Plaintiffs' failure to support those claims with authority suggesting that agents can be held liable for breach of a personal services contract such as the one alleged in the amended complaint, the Court will dismiss those claims as well.

### D.      Leave to Amend

In their brief in opposition to Defendants' motion to dismiss, Plaintiffs alternatively request that, in the event the Court grants Defendants' motion to dismiss the amended complaint, the Court provide them the opportunity to file another amended complaint.  (Doc. No. 14 at 15.) The Court declines to grant Plaintiffs' request.  Plaintiffs have already had the opportunity to amend their complaint once after the filing of an initial motion to dismiss by Defendants, and further, the Court dismisses Plaintiffs' claims on legal grounds not amenable to amendment by way of additional factual allegations.  Accordingly, the Court concludes that granting Plaintiffs the opportunity to file another amended complaint would be futile.

## IV.      CONCLUSION

For all the foregoing reasons, the Court will grant Defendants' motion to dismiss Plaintiffs' amended complaint.  An appropriate Order follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

20